# Hinderman *v.* Fisher, Appellant.

*Execution—Sheriff's sale—Life estate—Practice, C. P.—Act of January* 24, 1849, *P. L.* 676.

1. Under the fourth section of the act of January 24, 1849, a venditioni exponas for the sale of a life estate can only issue by the order of the proper court, on ten days' previous notice of the application for such writ, to the tenant for life, as directed in the proviso to the fourth section.   A sheriff's sale of a life estate, under a venditioni exponas, issued without such order and notice, is void, and confers no title upon the purchaser.   The sheriff's deed in such a case does not cure the irregularities in the process.

2. Where the record of a sheriff's sale of a life estate does not show that notices of inquisition and of the extension required by the act of January 24, 1849, had been given, parol evidence as to these notices is inadmissible unless their former existence and loss are first established by competent proof.

3. In an action by a life tenant to recover possession of the life estate taken from the plaintiff by an invalid sheriff's sale, the defendant cannot show that the property was dilapidated, and that he had been compelled to make certain repairs of a value stated.

4. In such a case the defendant will not be permitted to offer in evidence a petition to set aside the sheriff's sale, and a prior bill in equity praying for the reconveyance of the property to the plaintiff. As the plaintiff in bringing the ejectment is pursuing the proper remedy her previous attempts to establish her right by wrong remedies cannot be set up against her.

Argued Oct. 28, 1909.   Appeal, No. 245, Oct. T., 1908, by defendants, from judgment of C. P. Blair Co., Oct. T., 1908, No. 283, on verdict for plaintiff in case of Pauline Hinderman v. Andrew S. Fisher and Lillie L. Fisher.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Ejectment for a lot of land in the city of Altoona.   Before BELL, P. J.

The facts are stated in the opinion of the Superior Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff.   Defendants appealed.

*Errors assigned* were (1–7) various rulings on evidence set forth in the opinion of the Superior Court, and (8) in giving binding instructions for plaintiff.

*J. D. Hicks,* with him *D. J. Neff,* for appellants.—Parol evidence was admissible to prove the lost records: Clark v. Trindle, 52 Pa. 492; Braden's Est., 165 Pa. 184; Baskin v. Seechrist, 6 Pa. 154; Farmers' Bank v. Gilson, 6 Pa. 51; Clark v. Trindle, 52 Pa. 492; Boyer v. Webber, 22 Pa. Superior Ct. 35; Jackson v. Gunton, 26 Pa. Superior Ct. 203; Mencke v. Rosenberg, 202 Pa. 131; Gibson v. Winslow, 38 Pa. 49; Kelly v. Green, 53 Pa. 302.

*Harry A. McFadden,* with him *O. H. Hewitt,* for appellee.— An inquisition cannot be supported unless there has been notice of the fact to the defendant, either of the levy, or of the time and place of holding the inquest: The Act of Assembly of October 13, 1840, sec. 2, P. L. (1841) 1; 2 Purdon's Digest (13th ed.), p. 1565; Heydrick v. Eaton, 2 Binney, 215.

The sales must be made in the manner provided by law, in the cases of estates of inheritance, and only under a venditioni exponas: Com. ex rel. Knight v. Allen et al., 30 Pa. 49; Kintz v. Long, 30 Pa. 501; Snyder v. Christ, 39 Pa. 499; Kunselman v. Stine, 183 Pa. 10; Conrad v. Edwards, 7 Pa. C. C. Rep. 342; Conrad v. Edwards (No. 2), 7 Pa. C. C. Rep. 344.

There must first be a record, before there can be parol testimony received to make a new record or supply a lost record: Loughry v. McCullough, 1 Pa. 503; Baskin v. Seechrist, 6 Pa. 154; Black v. Aber, 2 Grant, 206.

OPINION BY BEAVER, J., March 3, 1910:

The plaintiff seeks, by an action of ejectment, to recover from the defendants a life estate in certain land sold by the sheriff of Blair county to the defendants. That the plaintiff had a life estate under the will of a former husband is not denied. The question is whether or not that estate passed by a sale by the sheriff to the defendants. That such a sale was

made, and a deed in accordance therewith was executed and delivered by the sheriff to the defendants, is not denied. Did the sale so made divest the title of the plaintiff and did the deed thereunder convey to the defendants said title?

The record of the judgment upon which a venditioni exponas was issued, in pursuance of which the sale was made by the sheriff, fails to show that the provisions of the Act of January 24, 1849, P. L. 676, entitled, "An act relating to judgments, and the acknowledgment of deeds, and sequestration of life estates, and relative to the high constable of the borough of Wilkes-Barre," were complied with. The fourth section of said act provides:

"Be it further enacted by the authority aforesaid, That from and after the first day of July next, it shall be the duty of every sheriff or coroner holding inquisitions on lands yielding rents, issues, or profits taken in execution, wherein the defendant has only a life estate, where the same shall be condemned, upon request made, and notice given to the plaintiff in the writ, his agent or attorney, at least three days before the holding of such inquisition by the defendant, his agent or attorney, or the occupant of the land, to cause the inquest to make an appraisement of the yearly value of such lands, and to return the same with or as part of the inquisition and condemnation, and thereupon, before any writ of venditioni exponas shall issue, the plaintiff shall wait thirty days from the date of such inquisition for the defendant, his agent, attorney, or occupant of the land, to elect by notice in writing to the sheriff or coroner, to pay the plaintiff the annual valuation in half yearly payments; and on failure of the defendant so to elect to pay, or on neglect or failure to pay for thirty days after any half yearly payment shall be due and payable, the like proceedings may be had as are now directed by law in cases wherein estates of inheritance taken in execution are extended on a sheriff's inquest: Provided, That nothing herein contained shall prevent the appointment of a sequestrator on application of any lien creditor under the provisions of the third section of this act, and of the act therein referred to: Provided further, That the writ of venditioni exponas, as authorized by

the third section, shall not be issued in any case wherein the annual rent, found by the jury aforesaid, shall be sufficient to pay the interest on the debts entered of record: And provided also, That no such writ shall be issued unless by the direction of the proper court; and on the application of any lien creditor for a writ of venditioni exponas, the tenant for life shall have at least ten days' notice of the application for such writ."

At the trial of the case, the plaintiff offered the writ, proved the marriage of the plaintiff and the will of her husband under which she was devised a life estate in all of his property, real, personal and mixed, and rested.

The defendant then offered a judgment of Kerr & Barclay against Pauline Hinderman as defendant and record of fi. fa. returned unexecuted, and an alias fi. fa. upon which there was a return of a levy upon the real estate in controversy. To this writ was attached a notice by the defendant's attorney claiming the benefit of the act of assembly approved April 9, 1849, known as the exemption act, and that an appraisement, in compliance with said act, was requested. A later notice requested an "inquest to make an appraisement of the yearly value of such lands as are taken in execution under above writ." Later the defendant's attorney notified the sheriff that "Mrs. Pauline Hinderman, the above named defendant, has only a life interest in the property you have levied upon, and under the act of assembly of January 24, 1849, you are 'to cause the inquest to make an appraisement of the yearly value of said lands, and to return the same with or as part of the inquisition and condemnation,' this for the purpose of giving the defendant the opportunity to pay the plaintiff the annual valuation in half yearly payments." An inquisition duly held was attached to the writ, fixing the yearly rental at the sum of $50.00, and a return by the sheriff to that effect, which inquisition was approved. The defendant then offered the writ of venditioni exponas, with levy upon the real estate in dispute, advertisement of the sheriff's sale attached thereto and a return by the sheriff: "Defendants' real estate sold to Lillie L. Fisher for the sum of $41.00, said sum applied to Sheriff Beegle's costs." This was followed by an

offer of the sheriff's deed, the description therein covering the lot in dispute.

The plaintiff objected to the offers of the foregoing papers, first, as immaterial, irrelevant and incompetent, and, second: "We object to the writs of fi. fa., alias fi. fa. and venditioni exponas for the reason that no præcipes have been offered in evidence upon which they are based." These were then duly offered. The objection was then made: "The plaintiff objects to the offer of the præcipe for vend. ex. for the reason that the inquisition having extended the defendants' property at a rental sufficient to pay the claims of record, and no notice having been served upon the plaintiff requiring her to elect whether she will retain the property and pay the rental and the claim, and the vend. ex. having been issued prior to her default, therefore the same must be issued upon petition and special order of the court."

The further objection was made, "That, under the law, the sheriff was required to give the defendant written notice, five days' notice, of the time and place of holding the inquisition, and there is no record or proof of such notice;" also that "the sheriff failed to notify the defendant of the holding of the inquisition and of her right of election to take the property or retain possession thereof at the appraisement." Also that "the notices required by the second section of the Act of October 13, 1840, P. L. (1841) 1, and 24th January, 1849, P. L. 676, requisite to the selling of lands of a defendant extended upon inquisition upon venditioni exponas were not given." Also: "There is no proof on the record showing that the defendant was in default of the payment of the rental at which the lands were extended." And further, "For the reason that the interest of the defendant in the land in question was a life estate, acquired under the will of her deceased husband, and that the proper and primary remedy in the present case for collection of the claim of the plaintiff in the writ under which the lands were sold was a sequestration of the life estate, and not any attempted sale of the life estate as was done in this case." The objection was sustained and the evidence rejected.

The defendants then undertook to show by parole that the

several notices required to be given, as contained in the objections of the plaintiff, had been given, which were severally objected to. These offers were all rejected by the court in a lengthy opinion which is summed up as follows: "As I have already indicated, it does seem to me that there is a fundamental prerequisite wanting in the record in this case, and I think it would be much better to rule this matter squarely, and rule as I have indicated that the purchaser of a life interest must look over the record and see that it is correct before he undertakes to take advantage of the exceptional remedy by a sale on a *venditioni exponas.* Choosing between two evils, it does seem to me it is much better, even if that purchaser suffers some loss, to stand by the legislation on the subject than to rely on the uncertain recollection of persons seven years afterwards who naturally are prone to think they did something which they ought to have done at the time, and as there is no record found on the dockets or among the papers of this court, or of any permission being granted by the court to Messrs. Kerr & Barclay to issue a *venditioni exponas,* I think that sheriff's sale to Mrs. Fisher was void, and gave Mrs. Fisher no title to the property, and we, therefore, sustain the objection, and seal a bill for the defendant."

Other offers were made by the defendant to show that the property, when purchased by Mrs. Fisher, was very much dilapidated and that a contractor was employed to make certain improvements and the value thereof, which were objected to and all objections sustained by the court, in which the court said: "It may be that, if the appellate courts affirm us and if the record is returned with an affirmance, and Mr. Fisher applies for a sequestrator, that we can to a certain extent protect him about these things, but I do not see how we can protect him in this case."

Other offers of evidence were made, tending to show that the plaintiff had filed no exceptions to the sheriff's sale, had slept upon her rights and had failed to come into court to assert these rights until over six months had elapsed after the sale, and to show that upon a petition to set aside the sale the court had refused to do so; also offering a bill in equity

filed by the plaintiff against the defendants, asking that the defendants be required to convey the said property to the plaintiff, to pay the costs and furnish such other relief as·might be deemed proper and equitable. Both of these offers were rejected, the court intimating that upon the petition of the plaintiff to set aside the sheriff's sale it was refused because the deed had been actually delivered and that the bill in equity had been dismissed, because it was an ejectment bill.

The first seven assignments of error relate to the refusal of the court to admit the several offers of evidence which have been referred to. Three of these relate to the attempt to build up a record which would support a sale of the premises in dispute by parol evidence as to facts concerning which the record is absolutely silent. Did the plaintiff have the notices of inquisition and of the extension of her real estate required by the act of 1849? Was the writ of venditioni exponas, upon which her property was sold, specially allowed by the court of common pleas? These were vital questions, for it has been held in numerous cases as early as Kintz v. Long, 30 Pa. 501, that, "Under the third section·of the act 24th January, 1849, a venditioni exponas for the sale of a life estate can only issue by the order of the proper court, on ten days' previous notice of the application for such writ, to the tenant for life, as directed in the proviso to the fourth section. A sheriff's sale of a life estate, under a venditioni exponas, issued without such order and notice, is void, and confers no title upon the purchaser," which case is referred to with approval in Kunselman v. Stine, 183 Pa. 1. See also DuFour v. Bubb, 199 Pa. 107.

The rulings of the court below, rejecting these offers, were in our opinion entirely correct. They all assumed the existence of a record which they proposed to prove lost and then supply them. It is competent, when a record is shown to have been in existence, the loss of which is satisfactorily explained, to prove its contents by parole, but this is a different question. The defendants here sought, first, to establish by mere implication the fact that a record did at one time exist, then prove the loss of it and finally show the contents

thereof. This cannot be done. There is nothing in the offers by which it was proposed to show that the missing papers, the contents of which were to be shown, had ever been made a matter of record. "The records of our courts are the muniments of all we possess, and no particular grievance can bear comparison with the abuses that would creep in were they adulterated with anything so uncertain and unsafe as parol evidence:" Loughry v. McCullough, 1 Pa. 503. "It is not to be doubted that a missing record may be proved by secondary evidence; but then its former existence and loss must be first established by competent proof:" Baskin v. Seechrist, 6 Pa. 154 (162). So in Black v. Aber, 2 Grant, 206: "After an inquisition and extension of real estate, a vend. exp. is irregular, until after a notice to defendant to accept the premises and pay the rent. Whatever ought to appear of record, and does not, must be presumed not to have occurred."

The offers of the defendants to show the dilapidation of the property and the moneys expended by them in its repair were irrelevant and immaterial. What possible relevancy had the condition of the property to the validity of the title of the defendants? This is not a question as to whether or not the defendants should be reimbursed for moneys expended by them. It is a question as to whether they should surrender the property to the plaintiff, because of the invalidity of their title.

The petition to set aside the sale, and the bill in equity asking that the defendants reconvey the property to the plaintiff were alike properly rejected. Their rejection was based upon the fact that the plaintiff was pursuing the wrong remedy, and particularly as to the bill in equity it was not allowed because it was an ejectment bill, but here she is pursuing her proper remedy and the fact that her bill was dismissed because it was an ejectment bill is in no sense an adjudication of the question.

It is alleged by the appellants that what are called by them irregularities in the process leading up to the sale were all cured by the sheriff's deed, and numerous authorities are cited for this proposition. If they were mere irregularities, this

would doubtless be so, but as a sale which was made after the return day, although continued by adjournment from a day prior, is void and vests no title in the purchaser, Cash v. Tozer, 1 W. & S. 519, so here, as already shown, the venditioni exponas upon which the sale was made having been issued without special authority from the court below, the sale was absolutely void, being made without authority. In Shields v. Miltenberger, 14 Pa. 76, Mr. Justice BELL points out the distinction between irregularities in the proceedings leading up to the sale and the defects which are fundamental and rendered it void. So in Workingmen's Protection & Bldg. Assn. v. Hausman, 8 W. N. C. 517, it was held: "Under act of 24th Jan. 1849, a vend. ex. for sale of a life estate cannot issue without order of court and notice to life tenant, and a sale under such execution is void."

If the sale was void, as held in this later case, and also in the cases previously cited, the court was, of course, justified in directing the verdict for the plaintiff.

Considered from every point of view, we are unable to say that the court below committed error in overruling the offers of evidence and in holding that the verdict should be for the plaintiff.

Judgment affirmed.